# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

```
_____
                                    )
LAUREN CARLSON and JAMAL            )
YUSUF, individually and on behalf of all )
others similarly situated,          )
                                    )
         Plaintiffs,                )
                                    )         Civil Action No.
     v.                             )         14-14201-FDS
                                    )
THE GILLETTE COMPANY and THE        )
PROCTER & GAMBLE COMPANY,           )
                                    )
         Defendants.                )
_____)
```

## MEMORANDUM AND ORDER ON
## MOTION TO DISMISS

**SAYLOR, J.**

This is a putative class action against the maker of Duracell batteries, The Gillette

Company, and its parent, The Procter & Gamble Company.  The Duracell batteries at issue were

"guaranteed for 10 years in storage."  The complaint alleges that Duracell batteries sometimes

leak when not in use, and that defendants therefore (1) falsely stated that the batteries would not

leak or otherwise fail within the first ten years after purchase and (2) failed to disclose that the

batteries had the potential to leak, all in violation of Mass. Gen. Laws ch. 93A.  The complaint

does not allege that any batteries purchased by plaintiffs have *actually* leaked or otherwise failed.

Nor does it allege that defendants have failed to make good on any guarantee, by refunding the

purchase price or paying for any incidental damage.

Defendants have moved to dismiss the complaint for failure to state a claim upon which

relief can be granted.  For the reasons set forth below, the motion will be granted.

I.      **Background**

    A.      **Factual Background**

The following facts are presented as stated in the complaint.

    1.      **The Batteries**

Prior to April 21, 1999, Duracell, Inc. operated as an independent corporation.  (Compl. ¶ 11).  On that date, it was acquired by The Gillette Company.  (*Id.*).  On October 21, 2005, The Procter & Gamble Company acquired Gillette, including the Duracell-branded battery line.  (*Id.*). Gillette continues to use Duracell as a brand name for its line of consumer batteries.  (*Id.*).

On June 1, 2012, defendants announced the launch of "Duralock Power Preserve Technology" for their entire portfolio of batteries.  (*Id.* ¶ 14).  They announced that all Duralock batteries would be marked with a "Duralock ring" and would be guaranteed for ten years in storage.  (*Id.*).  A June 1, 2012 press release stated:

> Duracell research reports that some 20 battery-operated devices reside in the typical household, so Duralock's guarantee means that consumers will be more prepared than ever before to power the devices in their homes regardless of the situation – from remote controls and toys to clocks and garage door openers, and essential devices like smoke and carbon monoxide detectors.
>
> "We know that consumers typically don't spend a large amount of time thinking about batteries," said Kuhn. "But with the demand for more battery power on the rise due to the large amount of battery-operated devices on the market, it's important that Duracell is recognized as a power solution they can trust. Whether a child's toy runs out of juice, a natural disaster occurs and a flashlight needs to work, or you're just looking to kick back and relax with a handheld gadget, Duralock's up to 10-year guarantee means that you will always have access to power when you need it – even if your batteries have been in storage for years."
>
> The launch of Duralock will be supported with Duracell's largest marketing campaign in history, including in-store displays, television and print advertising and public relations. Duracell with Duralock will be available at mass merchandisers, industrial, electronics and battery distributors and hardware stores nationwide starting late summer.

(*Id.* ¶ 15).

Beginning on June 1, 2012, and through at least November 18, 2014 (the "Putative Class Period"), the product packaging for Duracell Coppertop batteries included a prominent, ten-year guarantee.  (*Id.* ¶ 16).[1]  The guarantee stated, "GUARANTEED for 10 YEARS in storage." (*Id.*).[2]  Each individual battery included a date ten years in the future as a representation of the date before which the battery was guaranteed not to fail.  (*Id.* ¶ 19).

During the Putative Class Period, the back of the Duracell battery packaging contained the following language:  "Caution: May explode or leak, and cause burn injury, if recharged, disposed of in fire, mixed with different battery type, inserted backwards or disassembled."  (*Id.* ¶ 17).[3]  There was no warning on the packaging that the batteries may leak when used in a normal manner.  (*Id.* ¶ 20).

Defendants ran a number of television and radio commercials for Duracell batteries during the Putative Class Period.  (*Id.* ¶ 18).  One such advertisement stated:  "It just has to work. Duracell. Trusted Everywhere."  (*Id.*).  Another stated:  "Why do more emergency workers everywhere trust Duracell? Duralock Power Preserve that locks in power up to ten years in storage—guaranteed. Duracell with Duralock—Trusted everywhere."  (*Id.*).  The latter advertisement featured a fireman using a flashlight and an AA or AAA battery with the Duralock ring.  (*Id.*).  It aired approximately 1,216 times nationally through April 1, 2013.  (*Id.*).

---

[1] The complaint purports to bring an action on behalf of the named plaintiffs and the following class:  "All purchasers in Massachusetts who bought Duracell Coppertop AA and AAA batteries with Duralock beginning June 1, 2012 throughout the date of notice."  (Compl. ¶ 30).

[2] Pictures of the relevant packaging, as represented in paragraph 16 of the complaint, are attached as Appendix A.

[3] Defendants have submitted what they represent are two images of the back of the packaging of relevant batteries.  (Dkt No. 32, Ex. A).  Because plaintiffs dispute the authenticity of the image (specifically, whether it accurately represents the back of each battery package sold during the Putative Class Period), the Court declines to consider it in conjunction with this motion.

Duracell batteries retail at a premium price compared to similarly sized AA and AAA batteries sold by defendants' competitors. (*Id.* ¶ 23). The complaint alleges that "some or all of the premium price of the Duracell [b]atteries is the result of false and misleading statements outlined" in the complaint. (*Id.*).

According to the complaint, Duracell batteries "leak even when used in a normal and expected manner" and "when not in use." (*Id.* ¶¶ 20, 21). Such leakage "can damage any device that the batteries are stored in." (*Id.* ¶ 21).

The complaint alleges that "[d]efendants had knowledge of the problem of leakage in their AA and AAA sized batteries under normal conditions of use intended by [d]efendants" and that "[n]umerous complaints [were] filed directly with [d]efendants by consumers showing dates throughout the class period showing a leakage problem." (*Id.* ¶ 24). It also alleges that "[d]efendants, with specific knowledge of the leakage defect, did knowingly conceal pertinent facts from the ultimate consumer to enhance sales" and "withheld critical information in order to increase sales and/or their market share." (*Id.* ¶¶ 25, 26). It further alleges that "[d]efendants' glaring omission that the batteries can leak and ruin electronic devices would, and did, mislead reasonable consumers." (*Id.* ¶ 21).

According to a document submitted by plaintiffs, at least thirty on-line complaints were posted by consumers on Duracell's website from August 15, 2011, through February 10, 2014. (Dkt. No. 34, Ex. 1). Of the thirty customer complaints reflected in that document, nineteen purport to have been posted within the Putative Class Period. (*Id.*) Of those nineteen, seven refer to battery expiration dates from 2014 through 2018, while eleven list no battery expiration date. (*Id.*). The lone remaining customer complaint purports to have been posted by "MikeZ" of New Hampshire; it states, in part:  "That's right, a never used battery, labeled "Dec 2022", has

already failed." (*Id.* at 12).

Seven of the nineteen customer complaints posted during the Putative Class Period explicitly refer to AA or AAA batteries; three refer to only other battery sizes; and the remaining nine do not refer to a battery size. (*Id.*).

None of the thirty customer complaints in the document purports to have been posted by a consumer from Massachusetts. (*Id.*).

### 2. The Plaintiffs

Plaintiffs Lauren Carlson and Jamal Yusuf are residents of Massachusetts who purchased Duracell batteries in Massachusetts during the Putative Class Period. (Compl. ¶ 4).[4]  They had both seen the ten-year Duralock guarantee on the package label prior to purchasing those batteries. (*Id.* ¶ 29).  They had also seen television advertisements and heard radio advertisements concerning the Duralock guarantee, and they contend that they believed at the time of their purchases that the batteries would not fail for ten years. (*Id.*).  They allege that they did not know that Duracell batteries could leak even if used as intended. (*Id.*).  They further allege that if they had known of their potential to fail or leak, they would not have purchased them. (*Id.*).  Both plaintiffs still possess the purchased batteries. (*Id.* ¶ 28).  There is no allegation that the batteries have, in fact, leaked.

### B. Procedural Background

On November 18, 2014, plaintiffs mailed a written demand for relief to each defendant. (*Id.* ¶ 27).  The demand letter identified the plaintiffs and the putative class and described the alleged unfair or deceptive acts or practices of defendants, as well as the alleged injuries suffered

---

[4] The complaint does not specify the exact dates on which plaintiffs purchased Duracell batteries. Paragraph 4 of the complaint states that the purchases were made "[d]uring the class period."  Paragraph 28 describes the purchases as having taken place "[a]t various times in the last four years."

by plaintiffs and the putative class.  (*Id.*).

On November 19, 2014, plaintiffs filed their initial complaint in this Court.  They filed an amended complaint on January 6, 2015, and a second amended complaint on April 10, 2015. The second amended complaint is the operative complaint.  It alleges in Count One that defendants violated Mass. Gen. Laws ch. 93A "[b]y falsely misrepresenting Duracell [b]atteries as guaranteed not to fail for ten years and by failing to disclose that the Duracell [b]atteries may leak."  (*Id.* ¶ 41).  Count Two alleges a claim of unjust enrichment.

Defendants have moved to dismiss the complaint for failure to state a claim upon which relief can be granted.

## II.   <u>Legal Standard</u>

On a motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and give . . . plaintiff the benefit of all reasonable inferences therefrom."  *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)).  To survive a motion to dismiss, the complaint must state a claim that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).  Dismissal is appropriate if the facts as alleged do not "possess enough heft to show that plaintiff is entitled to relief."  *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (alterations omitted) (internal quotation marks omitted).

6

Ordinarily, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). For that reason, "great specificity is ordinarily not required to survive a Rule 12(b)(6) motion." *Garita Hotel Ltd. Partnership v. Ponce Federal Bank, F.S.B.,* 958 F.2d 15, 17 (1st Cir. 1992). However, under Fed. R. Civ. P. 9(b), in cases "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." The purposes of that requirement are (1) to give the defendants notice and enable them to prepare meaningful responses; (2) to preclude the use of a groundless fraud claim as a pretext to using discovery as a fishing expedition; and (3) to safeguard defendants from frivolous charges that might damage their reputations. *See In re Lupron Mktg. & Sales Practices Litig.*, 295 F. Supp. 2d 148, 170 (D. Mass. 2003) (quoting *New England Data Services, Inc. v. Becher*, 829 F.2d 286, 288 (1st Cir. 1987)); *see also McGinty v. Beranger Volkswagen, Inc.*, 633 F.2d 226, 228-29 (1st Cir. 1980). Under the 9(b) heightened pleading requirement, a complaint must state the time, place, and content of the alleged false or fraudulent representations to state a claim for fraud. *Epstein v. C.R. Bard, Inc.*, 460 F.3d 183, 190-91 (1st Cir. 2006). The Rule 9(b) pleading requirement applies both to general claims of fraud and also to "associated claims where the core allegations effectively charge fraud." *North American Catholic Educational Programming Foundation, Inc. v. Cardinale*, 567 F.3d 8, 15 (1st Cir. 2009); *see Martin v. Mead Johnson Nutrition Co.*, 2010 WL 3928707, *3 (D. Mass. Sept. 30, 2010) ("A claim under Chapter 93A that involves fraud is subject to the heightened pleading requirement.").

## III.   <u>Analysis</u>

Mass. Gen. Laws ch. 93A, § 2(a) prohibits "unfair or deceptive acts or practices in the

conduct of any trade or commerce."  In order to maintain a claim under chapter 93A, a plaintiff

must allege "(1) a deceptive act or practice on the part of the seller; (2) an injury or loss suffered

by the consumer; and (3) a causal connection between the seller's deceptive act or practice and

the consumer's injury."  *Casavant v. Norwegian Cruise Line, Ltd.*, 76 Mass. App. Ct. 73, 76

(2009) (citing Mass. Gen. Laws ch. 93A, § 9).  An affirmative act may be deceptive "when it has

the capacity to mislead consumers, acting reasonably under the circumstances, to act differently

from the way they otherwise would have acted (i.e., to entice a reasonable consumer to purchase

the product)."  *Aspinall v. Philip Morris Cos., Inc.*, 442 Mass. 381, 396 (2004).  A business may

also violate ch. 93A through an omission, as when it "fails to disclose to a buyer or prospective

buyer any fact, the disclosure of which may have influenced the buyer or prospective buyer not

to enter into the transaction."  940 Mass. Code. Regs. § 3.16(2).

Here, the complaint alleges two separate deceptive acts or practices on the part of

defendants:  an affirmative misrepresentation and a material omission.  The Court will consider

each in turn.

### A.     The Affirmative Representations on the Battery Packaging

Plaintiffs contend that by placing the language "guaranteed for 10 years in storage" on

the packaging, defendants led them to believe that the purchased batteries had absolutely no

potential to leak or otherwise fail within ten years of purchase.  Plaintiffs allege that the batteries

in fact have the potential to leak, and that therefore the statement was an affirmative

misrepresentation that induced them to purchase batteries that they would not otherwise have

purchased.

Taking the allegations in the complaint to be true, the Court will assume that Duracell

batteries "may leak when used in a normal and expected manner"—in other words, that they

have some propensity to leak.  The question, then, is whether under those circumstances the phrase "guaranteed for 10 years in storage" was an actionable affirmative misrepresentation.  For a number of reasons, the Court finds that it was not.

First, the guarantee is expressly limited in scope to the first ten years after purchase.  But the complaint contains no actual or express allegation that the batteries have the potential to leak within that period.  In fact, none of the allegations of leakage refer to any time period of any kind.  (*See* Compl. ¶¶ 20-21, 24).  Although plaintiffs at oral argument made it clear that plaintiffs contend that the batteries sometimes leak within ten years, the Court is limited at this stage to evaluating the four corners of the complaint, not statements made at oral argument.  *See Young v. Lepone*, 305 F.3d 1, 10-11 (1st Cir. 2002) ("The fate of a motion to dismiss under Rule 12(b)(6) ordinarily depends on the allegations contained within the four corners of the plaintiff's complaint.").[5]

Second, the guarantee on the packaging is limited explicitly to batteries that are kept "in storage."  Thus, any allegations in the complaint about battery leakage that takes place outside of storage conditions would appear to be irrelevant to plaintiffs' claims.  For example, the allegation in paragraph 20 of the complaint that "[t]he Duracell [b]atteries leak even *when used in a normal and expected manner*" and the allegation in paragraph 24 that "[d]efendants had knowledge of the problem of leakage in their AA and AAA sized batteries *under normal conditions of use* intended by [d]efendants" both appear to refer to leakage that takes place during or after "use," not "in storage."  Such leakage would not appear to be covered by the

---

[5] The only clear reference to an instance of a battery purchased after June 1, 2012, having leaked within ten years is found in the "amalgamation" of on-line customer complaints submitted by plaintiffs in conjunction with their opposition to the motion to dismiss.  (*See* Dkt. No. 34, Ex. 1, at 12 (Post by "MikeZ") ("That's right, a never used battery, labeled "Dec 2022", has already failed.")).  The customer complaint in which that reference appears was apparently posted by a consumer from New Hampshire.  (*Id.*).  Defendants object to the inclusion of the customer complaints in the record.  Because the Court finds nothing in the complaints that would compel a different result, it assumes without deciding that they are properly part of the record.

guarantee.  (Compl. ¶¶ 20, 24) (emphasis added).[6]

Finally, and most importantly, the statement that Duracell batteries are "guaranteed for 10 years in storage" is simply not a promise that the batteries have no potential whatsoever to leak or otherwise fail within that time.  All consumer products, indeed all manufactured products, have *some* propensity to fail.  They are designed and manufactured by human beings, and human beings make mistakes.  A "guarantee" is not a promise of perfection.  No reasonable consumer would believe otherwise.[7]  Nor is a "guarantee" a statement of the current condition of the product, such as a promise that the batteries are made from certain materials or according to certain manufacturing methods.

Instead, a "guarantee" is a promise by the manufacturer that if the product does not perform as anticipated, the company will repair or replace the product or refund the purchase price (and, under some circumstances, pay damages).  Put another way, a "guarantee" is a form of an express warranty.  *See* Mass. Gen. Laws ch. 106, § 2-313(1)(a); *Anthony's Pier Four, Inc. v. Crandall Dry Dock, Eng'rs, Inc.*, 396 Mass. 818, 823 (citing *Clevenger v. Haling*, 379 Mass. 154, 157-59 (1979).[8]  That also comports with the common understanding of the term "guarantee" in connection with the sale of a product.[9]  Indeed, because no set of products has

---

[6] The only allegation in the complaint that may refer to leakage that takes place while batteries are "in storage" appears in paragraph 21:  "Defendants conspicuously failed to disclose that the Duracell [b]atteries leak when not in use."  However, a battery that is "not in use" may not necessarily be "in storage."  That language could also refer to a battery that has been used previously (and perhaps extensively) and then left inside a device between uses.  In any event, the precise meaning of "in storage" is not clear.

[7] Notably, the complaint does not allege that defendants have made an affirmative representation about the rate of failure of the batteries during testing, or otherwise.

[8] Subsection (2) of section 2-313 states that "[it] is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee'."  That subsection thus implies that including the word "guarantee" in a promise would make the seller's intention to create an express warranty particularly clear.

[9] In their opposition to the motion to dismiss, plaintiffs cited a definition of "guarantee" from the Cambridge on-line dictionary that included the language, "If you guarantee something, you promise that a particular thing will happen or exist."  (Pl. Opp. at 6 (citing Cambridge Dictionaries Online,

ever been (or ever could be) completely perfect, a broader interpretation of the term could render

its use by *any* manufacturer in the sale of *any* product to be a false (and therefore actionable)

statement.

Accordingly, to an objectively reasonable consumer, the use of the term "guaranteed" on

the battery packaging would not be interpreted as anything beyond a promise to repair, refund, or

replace (and, possibly pay, other damages caused by) a failed battery.  *See Aspinall*, 442 Mass. at

395.  Although the question of "[w]hether conduct is deceptive is initially a question of fact," it

is one that is "to be answered on an objective basis."  *Id.* at 394.  Considered objectively, and

with the aid of common sense, the use of the disputed label does not constitute a "deceptive act[]

or practice[]" within the meaning of Chapter 93A.[10]

The allegedly deceptive television and radio advertisements referred to in the complaint

fare no better.  The first of the two advertisements allegedly stated, "It just has to work. Duracell.

Trusted Everywhere."  (Compl. ¶ 18).  That advertisement does not make an explicit promise or

guarantee; at most, it "amounts to 'nothing more than a kind of self-directed corporate puffery.'"

*Millen Indus., Inc. v. Flexo-Accessories Co., Inc.*, 5 F. Supp. 2d 72, 74 (1998) (quoting *Shaw v.

Digital Equip. Corp.*, 82 F.3d 1194, 1218 (1st Cir. 1996)).  The second advertisement quoted in

the complaint allegedly stated, "Why do more emergency workers everywhere trust Duracell?

Duralock Power Preserve that locks in power up to ten years in storage—guaranteed. Duracell

with Duralock—Trusted everywhere."  (Compl. ¶ 18).  That advertisement simply makes the

---

http://dictionary.cambridge.org/us/dictionary/americanenglish/guarantee)).  Notwithstanding the lack of specificity
in that definition as to *what* is being promised to happen or exist, it is noteworthy that the first definition listed on
the website cited by plaintiffs is "a promise that something will be done or will happen, *esp. a written promise by a
company to repair or change a product that develops a fault within a particular period of time*."  Cambridge
Dictionaries Online, http://dictionary.cambridge.org/us/dictionary/americanenglish/guarantee (emphasis added).

[10] The complaint does not allege that defendants have failed to compensate plaintiffs for a failed battery or
even that any of the purchased batteries actually failed.

same guarantee as that on the packaging.[11]

Accordingly, the complaint does not state a claim upon which relief can be granted based on any alleged affirmative misrepresentations by defendants.

### B.     The Allegedly Deceptive Omission

Plaintiffs further contend that, notwithstanding the effect of the guarantee, defendants violated 940 Mass. Code Regs. § 3.16(2) (and, thereby, Mass. Gen. Laws ch. 93A) by "failing to disclose that the Duracell [b]atteries may leak." (Compl. ¶ 41). The cited regulation specifies that it is a violation of ch. 93A, § 2 for a seller to "fail[] to disclose to a buyer or prospective buyer any fact, the disclosure of which may have influenced the buyer or prospective buyer not to enter into the transaction." 940 Mass. Code Regs. § 3.16(2). Despite the broad language of the regulation, it has been interpreted to proscribe only a "material, knowing, and willful nondisclosure," *Underwood v. Risman*, 414 Mass. 96, 99 (1993), that is "likely to mislead consumers acting reasonably under the circumstances." *Mayer v. Cohen-Miles Ins. Agency, Inc.*, 48 Mass. App. Ct. 435, 443 (2000) (citing *Commonwealth v. AmCan Enters.*, 47 Mass. App. Ct. 330, 334 (1999)).

Here, the complaint expressly alleges that "[h]ad [p]laintiffs known of the Duracell potential to fail, leak and/or damage the [p]laintiffs' electronics, they would not have purchased Duracell [b]atteries." (Compl. ¶ 29). Taking that allegation as true, then the undisclosed potential for battery leakage was indisputably a fact that would "have influenced [plaintiffs] not to enter into the transaction" to purchase the batteries. *See* 940 Mass. Code Regs § 3.16(2).

That does not end the inquiry, however. In order to make out a claim under the

---

[11] As above, the Court expresses no opinion as to whether the statements made in the quoted advertisements could give rise to a valid claim for breach of express warranty under Massachusetts law.

regulation, a complaint must allege a "material, knowing, and willful nondisclosure," *Underwood*, 414 Mass. at 99, that is "likely to mislead consumers acting reasonably under the circumstances." *Mayer*, 48 Mass. App. Ct. at 443. Here, although the complaint appears to sufficiently allege knowledge and willfulness on the part of defendants, *see* (Compl. ¶¶ 24-26); Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake . . . knowledge[] and other conditions of a person's mind may be alleged generally."), its allegations, even when taken as true, do not establish that defendants' alleged nondisclosure was material or was likely to mislead a reasonable consumer.

The complaint contains only general allegations that Duracell batteries "leak" (or had the "potential to" leak) under certain conditions. It includes no allegations that state the extent of the leakage problem or even that the problem was significant, substantial, or widespread. The fact that some small percentage of the products may fail, without more, is not a fact that is likely to influence an objectively reasonable customer; all products fail to at least some small degree. At a minimum, without a sense of the magnitude of the issue (Was it one battery in a billion? One in two?), it is impossible to ascertain whether the "potential to fail" was material.

The closest such allegation is that which refers to the "[n]umerous complaints filed directly with [d]efendants by consumers showing dates throughout the class period showing a leakage problem." (Compl. ¶ 24). An indication that "numerous" batteries leaked over a period of years, however, without any other data points, such as the total amount of batteries sold, or the leakage rates of comparable batteries sold by other manufacturers, hardly supports an inference that any substantial leakage problem existed. Moreover, a review of the thirty customer complaints submitted by plaintiffs reveals that eleven were posted prior to the start of the Putative Class Period; seven of the remaining nineteen recite expiration dates prior to 2022 (such

that any ten-year guarantee would have to have been made prior to the Putative Class Period);
and three of the remaining twelve refer to battery sizes other than AA and AAA.  (Dkt. No. 34,
Ex. 1).[12]

Plaintiffs contend that because Duracell charges a "premium price compared to similarly
sized AA and AAA batteries of competitors' products," reasonable consumers would be
dissuaded from purchasing its batteries upon knowledge of any leakage problem.  (*See* Compl.
¶ 23).  Again, without any information whatsoever as to the likelihood of leakage (either in
Duracell batteries or competing batteries), a reasonable consumer would not have any basis on
which to determine that Duracell's "premium price" was unjustified as compared to that of its
competitors.  Thus, if he or she was otherwise inclined to purchase Duracell batteries, he or she
would not be "influenced . . . not to enter into the transaction" by the bare allegations contained
within the complaint.  That plaintiffs apparently would have been so influenced is not sufficient
to state a claim under ch. 93A.  *See Aspinall*, 442 Mass. at 395 (noting that the ch. 93A standard
is somewhat "difficult to satisfy because it depends on the likely reaction of a reasonable
consumer rather than an ignoramus").

In short, the complaint fails to allege sufficient facts to support an inference that any
relevant leakage problem—or, by extension, the nondisclosure of such a problem—was
"material."  *See Mayer*, 48 Mass. App. Ct. at 443 (quoting *Underwood*, 414 Mass. at 99).
Further, and similarly, it does not support an inference that knowledge of the leakage problem
would have affected the behavior of a reasonable consumer.  *See id.*

---

[12] Because the complaint specifically alleges that Duracell changed, or purported to change, its battery
technology as of June 1, 2012, any leakage problem relating to batteries sold before that date would not appear to be
relevant to the alleged nondisclosure.  (*See* Compl. ¶¶ 14-15).

Accordingly, the complaint does not state a claim upon which relief can be granted arising out of any alleged material omission.

## IV.    <u>Conclusion</u>

For the reasons set forth above, defendants' motion to dismiss the complaint is GRANTED.

**So Ordered.**

/s/  F. Dennis Saylor
F. Dennis Saylor IV

Dated: October 23, 2015                    United States District Judge

**APPENDIX A**



